# EXHIBIT A

# Invoice



**BRIGHT**
VANGUARD LLC

**From**

Bright Vanguard LLC
8000 Ih 10 West #614
San Antonio, tx, 78230
United States

**To**

GREEN SHEET MARKETING LLC
1600 ATKINSON ROAD SUITE 200
LAWRENCEVILLE, GA, 30043
United States

**Invoice No.**
GREEN SHEET

**Date**
Jun 28 2021

**Invoice Due**
Jun 28 2021

| Description | Quantity | Rate | Amount |
|---|---|---|---|
| HPE DL380 Gen10 Intel Xeon-Gold 6242 (2.8GHz/16-core/150W) Processor Kit<br>16x HPE 16GB (16x16GB) Dual Rank x8 DDR4-2933 CAS-21-21-21 Registered Smart Memory Kit<br>HP 3.84TB 6G SATA Read Intensive-3 SFF 2.5-in SC 3yr Wty Solid State Drive<br>HPE DL38X Gen10 Universal Media Bay Kit<br>Use On-Board Basic SATA RAID (0,1,10)<br>HPE 96W Smart Storage Battery (up to 20 Devices) with 145mm Cable Kit<br>HPE Ethernet 1Gb 4-port 366FLR (RJ45) Adapter | 6 | 33765.92 | USD 202595.52 |
| Microsoft Windows Server 2019 (16-Core) Datacentre ROK English Software | 6 | 4899.70 | USD 29398.20 |
| Innovation Data Center Rack 48U X42"D X 30"W | 2 | 8897.43 | USD 17794.86 |
| Io Safe 1019+NAS 90 TB external Disaster Proof Drive Fire Protection | 5 | 19854.93 | USD 99274.65 |
| Up to 1550° F, 30 minutes per ASTM E-119 | | | |
| Water Protection | | | |
| IP68: Fully submersed, fresh or salt water, 10 foot depth, 72 hours | | | |
| Theft Protection | | | |
| Metal Kensington Lock Slot, optional Floor Mount Kit | | | |
| Battery backup with firewall and surge protection | 4 | 4415.29 | USD 17661.16 |
| SALES TAX | 1 | 22003.46 | USD 22003.46 |

|  |  |
|---|---|
| Sub Total | 388,727.85 |
| **Total** | **USD 388,727.85** |

**Paid to Date**            USD 0.00

| Balance |
| --- |
| USD 388,727.85 |

**Invoice Note**

Send all payments to:
SECURITY SERVICE FEDERAL CREDIT UNION
ROUTING:
ACCT:

**Email**: craig@brightvanguard.net


Powered by

# EXHIBIT B

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

**tcf** Now part of The Huntington National Bank

# Installment Payment Agreement

| "IPA": Installment Payment Agreement Number 001-0844953-500 dated June 29, 2021 |
|---|
| "Debtor": Green Sheet Marketing, LLC, 1600 Atkinson Road Northwest, Suite 200, Lawrenceville, GA 30043 |
| Fax:    E-mail: marlons@gottadreamgreen.com |
| "Creditor": The Huntington National Bank, 11100 Wayzata Blvd, Suite 801, Minnetonka, MN 55305 |
| Fax:(800) 844-3577    E-mail: TCFCSCustomerService@tcfbank.com |

## SUMMARY OF TERM AND PAYMENTS:

| Funding Date | Financed Amount | Number of Payments | Payment Amount | Document Fee | Advance Payment(s) |
|---|---|---|---|---|---|
| | $388,727.85 | 60 | $7,633.13 | $150.00 | N/A |
| | | | | | For Number of Month(s): N/A |

| Software, Fees, Costs and Equipment: HPE DL380 Gen 10 Intel server, storage, software, water & fire protection with any and all accessories and attachments as listed on Bright Vanguard LLC Invoice No. GREEN SHEET dated 28-June-2021 | Location: 1600 Atkinson Road Northwest, Suite 200, Lawrenceville, GA 30043 |
|---|---|

1. **Financing.** Debtor has requested that Creditor provide financing to enable Debtor to purchase or acquire a license in the Software, Fees and Costs described above and/or on any exhibit hereto (together, the "Software") and to purchase the Equipment described above or on any exhibit hereto (the "Equipment"). Upon Creditor's acceptance and execution of this IPA, receipt of any amounts due upon signing of this IPA, receipt of other documentation required by Creditor, confirmation that the Software and Equipment has been accepted by Debtor and no material adverse change in Debtor's condition or business, Creditor will pay the Financed Amount, as adjusted in accordance with Section 2 below, directly to the Software and Equipment vendor(s) on the terms and conditions set forth herein. Debtor authorizes Creditor to complete the Funding Date set forth above based on the date of actual funding to the vendor(s) and to make necessary corrections to any license numbers or other identification of the Software and Equipment when known.

2. **Payments.** In consideration of the financing provided by Creditor, Debtor shall pay to Creditor the Financed Amount, together with interest thereon by paying each of the following when specified: (a) the amount of any Advance Payment(s) and any Document Fee set forth above, due and payable on the date Debtor delivers this IPA to Creditor, and (b) consecutive monthly installments each equal to the Payment Amount set forth above for the Number of Payments set forth above, less the number of Advance Payments made upon delivery of this IPA, with such consecutive monthly Payments beginning on the date that is one month after the Funding Date and then on the same day of each calendar month thereafter. If, for any reason, the final amount that Creditor finances (all amounts Creditor pays in connection with the purchase, delivery and installation of the Software and Equipment, including any trade-up and buy out amounts, and any other amounts financed including any financed taxes, and before application of any subsidies or like amounts) is more or less than the Financed Amount set forth above (which is based on an estimate), the Payment Amount will be adjusted to provide Creditor the same yield it would have obtained if the final amount financed had been equal to the Financed Amount set forth above. Debtor agrees that this IPA will be amended to reflect the adjusted Financed Amount and Payment Amount, and the adjusted Advance Payment(s), if applicable, by (i) written notice from Creditor to Debtor for adjustments of 10% or less; or (ii) signed Amendment. If any amount payable hereunder is not paid within ten (10) days of its due date, Creditor may impose a late fee of up to 10% of the amount of the past due payment and may, in addition, charge interest on the unpaid amount at eighteen percent (18%) per annum or, if less, the maximum rate permitted by applicable law. Creditor may apply payments hereunder to Debtor's obligations hereunder in such order as it deems appropriate. Debtor may from time to time make telephonic requests for, and hereby authorizes, Creditor or its agents to make and draw checks or drafts on a checking account to be designated by Debtor, payable to Creditor or order, to pay amounts due hereunder, plus Creditor's standard per item fee for making and drawing such check or draft. Creditor may rely on such request made by any person it believes has authority to make such request on behalf of Debtor. Debtor will pay Creditor a fee, in an amount determined by Creditor, not to exceed the maximum amount from time to time permitted by applicable law, on demand for any check or automatic payment request returned due to insufficient funds or stop payment. This IPA shall be construed so that interest, the applicable interest rate, fees and other charges shall not exceed the maximum time price differential, rate, interest or amount allowed by applicable law, and any excess payment will be applied first to prepay principal hereunder and then as a refund to Debtor. If Debtor is an individual and the Financed Amount is $100,000 or more, this IPA is made under Minn. Stat. Sec. 334.01; and this IPA is made under Minn. Stat. Sec. 334.022 if Debtor is an "organization" as defined therein.

3. **Security Interest.** As security for all present and future obligations of Debtor

to Creditor, including without limitation all obligations under this IPA, Debtor hereby grants to Creditor a security interest in all of Debtor's right, title and interest in the Equipment and Software, including without limitation its license(s) and rights to use the Software, together with the license agreement and any related service agreement and all rights thereunder, all upgrades, modifications, improvements, releases and versions related to the Software, and all proceeds of all of the foregoing (together, the "Collateral"). Debtor authorizes Creditor to file such financing statements, and take such other actions, as Creditor deems appropriate to perfect and protect such security interest.

4. **Representations and Warranties.** Debtor represents and warrants that (a) it has obtained and holds a valid and effective license for the Software and such license will not expire or terminate prior to the final Payment due under this IPA; (b) each Software vendor is either the licensor of the Software or an authorized distributor of the licensor(s); (c) Debtor has not received or been promised any rebates, credits, refunds or other compensation, in cash or in kind, with respect to the Collateral except as disclosed on the invoice(s) provided to Creditor; (d) Debtor's execution, delivery and performance of this IPA will not violate or create a default under any law, regulation, order, agreement or charter document binding on Debtor or its property; (e) this IPA has been duly authorized, executed, and delivered by Debtor; (f) Debtor's signatory of this IPA has the authority to bind Debtor to this IPA; (g) the Collateral will be used solely for business purposes and not for agricultural, personal, family or household purposes; (h) the Collateral shall at all times be located at the Location set forth above which Location is owned or leased by Debtor; (i) all financial statements that Debtor has delivered to Creditor fairly present the financial condition of Debtor as of the date thereof and the results of Debtor's operations and cash flows for the periods then ended, all in accordance with generally accepted accounting principles consistently applied; (j) at the time Creditor pays the Software and Equipment vendor(s) the Financed Amount, the Software and Equipment shall have been delivered to the Location and Debtor shall have irrevocably accepted the Collateral for all purposes under this IPA; and (k) if Debtor is a legal entity, Debtor shall not allow any Blocked Person(s) to have an ownership interest in or control of Debtor. "Blocked Person" means any person or entity (A) that is now or at any time, on a list of Specially Designated Nationals issued by the Office of Foreign Assets Control ("OFAC") of the United States Department of the Treasury or any sectoral sanctions identification list; (B) whose property or interests in property are blocked by OFAC or who is subject to sanctions imposed by law, including any executive order of any branch or department of the United States government, or (C) otherwise designated by the United States or any regulator having jurisdiction or regulatory oversight over Creditor, to be a person with whom Creditor is not permitted to extend credit to or with respect to whom, a debtor-creditor relationship may result in penalties against Creditor or limitations on Creditor's ability to enforce a transaction.

5. **Covenants.** Unless expressly included in the description of Software or Equipment set forth above or on any attached Exhibit and paid by Creditor on the Funding Date, Debtor shall be responsible for all costs of delivery, installation, operation, service and maintenance of the Collateral and Creditor shall have no obligation to pay any such amounts whether now or hereafter owing. Debtor shall maintain the Collateral in good repair, condition and working order, maintain the Software license(s) for the term of this IPA and comply with all terms and conditions of the license agreement(s). Upon Creditor's request, Debtor shall deliver to Creditor a true and correct copy of its complete agreement with each vendor relating to the Software, the Equipment and any related services, including all schedules thereto. Debtor is responsible for any loss, theft or destruction of, or damage to, the Collateral from any cause (collectively "Loss"), whether or not insured, and no Loss shall relieve Debtor of its

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

obligations hereunder. Debtor shall promptly notify Creditor in writing of any Loss to the Collateral and shall promptly repair or replace any Collateral after a Loss. Debtor shall comply with all applicable laws and regulations related to the Collateral and its use. Creditor is financing Debtor's purchase of the Collateral and, notwithstanding anything contained in this IPA to the contrary, Debtor and Creditor hereby agree and acknowledge that Debtor owns and holds legal title to the Collateral and, pursuant to Section 3 of this IPA, Debtor grants to Creditor a valid, perfected and enforceable first priority Security Interest in the Collateral and proceeds thereof, that Creditor will at all times hold, subject to no other security interest, mortgage, lien or encumbrance. Debtor represents, warrants and agrees with and to Creditor that Debtor shall not sell, transfer, sublicense, lease, grant a security interest in, or otherwise permit any encumbrance on the Collateral, except for the security interest granted to Creditor, will at all times own and hold good legal title to the Collateral, and shall bear the cost of keeping the Collateral free from or removing, any such lien, claim or encumbrance. Debtor shall permit Creditor to inspect the Collateral and Debtor's records related thereto at any time during business hours. Debtor shall pay when due all property, sales, use, excise and other taxes now or hereafter levied on or assessed against the Collateral or this transaction. Debtor's exact legal name is as set forth above and: (i) if Debtor is an individual, such legal name is exactly as stated on Debtor's valid and unexpired state driver's license, or alternative state identification, issued by Debtor's primary state of residence ("Debtor State ID"); or (ii) if Debtor is a legal entity, such legal name is as stated on Debtor's applicable organizational documents. Debtor shall not change its legal name or chief executive office or state of organization (if a legal entity) or principal residence (if an individual), and will not permit its Debtor State ID to expire, become invalid, or fail to be properly renewed, (if an individual) without, in each case, at least 30 days' prior written notice to Creditor of any such event. During this IPA, upon the request of Creditor, Debtor will provide copies of its Debtor State ID (if an individual) or applicable organizational documents (if a legal entity). Debtor, if an individual, is a citizen or lawful permanent resident of the United States. Debtor shall execute and deliver to Creditor such other documents and provide such information, including information identifying the owners of Debtor and its affiliates and their respective ownership interests, as Creditor may, reasonably deem necessary to comply with laws or regulations applicable to Debtor or Creditor, including laws and regulations requiring Creditor to obtain Debtor's certification of its beneficial owner(s) prior to making payment(s) to Debtor during or after the term of this IPA.

6. **Indemnity.** Debtor shall indemnify and hold harmless Creditor, its successors and assigns, employees, officers, directors and agents from and against any and all claims or suits for any loss, damage or injury sustained by any person whatsoever by reason of the financing, use, possession or disposition of the Collateral and, in this connection, Debtor shall pay the costs of all reasonable legal fees and all other reasonable expenses incurred by Creditor, its successors and assigns.

7. **Events of Default.** Each of the following is an "Event of Default" hereunder: (a) Debtor fails to pay any Payment or other amount due hereunder when due; (b) Debtor fails to comply with any other covenant or agreement hereunder and such failure continues for 10 days after notice by Creditor; (c) any representation or warranty by Debtor set forth in or made in connection with this IPA shall prove materially false or misleading; (d) Debtor defaults under any other obligation to Creditor; (e) Debtor or any guarantor of this IPA ("Guarantor") ceases doing business as a going concern or makes an assignment for the benefit of creditors; (f) Debtor or any Guarantor voluntarily files or has filed against it involuntarily a petition under the federal Bankruptcy Code or any other present or future federal or state bankruptcy or insolvency law, or a trustee, receiver or liquidator is appointed for it or for all or a substantial part of its assets; (g) any individual Debtor or Guarantor dies; (h) any material indebtedness of Debtor or any Guarantor is accelerated or payment in full thereof is demanded; or (i) Debtor or any Guarantor shall divide or shall consolidate with, merge into or transfer all or substantially all its assets to another entity or individual.

8. **Remedies.** Following the occurrence of an Event of Default, Creditor may, in its sole discretion, exercise any one or more of the following rights and remedies: (a) declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the sum of all amounts then due, plus all unpaid Payments for the remaining term of this IPA, discounted from their respective due dates at the implicit interest rate for this IPA, as conclusively determined based on the Financed Amount and the amount and timing of each Payment, plus a fee equal to 5% of this amount if the Event of Default occurs during months 0 through 12; 4% if it occurs during months 13 through 24 and 3% if it occurs during months 25 through the end of the term of this IPA, and the same shall thereupon be and become immediately due and payable in full without presentment, notice of dishonor, or protest, all of which Debtor hereby waives; (b) charge interest on the unpaid amount of liquidated damages due hereunder at eighteen percent (18%) per annum, but in no event greater than the maximum rate permitted under

applicable law, and all interest accrued hereunder shall be due and payable on demand by Creditor; (c) either directly or through licensor(s), suspend or terminate the Software license(s), require Debtor to uninstall and remove the Software (including all copies) from any computer systems owned or controlled by Debtor or used for Debtor's benefit, require the delivery to Creditor of any tangible medium on which any portion of the Software resides and all written manuals and materials related thereto, and terminate all support and other services provided under or in connection with the Software or its license; (d) exercise any and all other rights and remedies available to a secured creditor under the Uniform Commercial Code as in effect in the State of Minnesota, and in connection therewith, Debtor agrees at its expense to assemble the Collateral and make it available to Creditor at a place or places to be designated by Creditor in the continental United States, and agrees that any notice of intended disposition of the Collateral required by law shall be deemed reasonable if such notice is given to Debtor in the manner provided in this IPA before the date of such disposition; (e) recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under this IPA, including expenses of uninstalling, removal, repair, storage, transportation, and disposition of the Collateral, costs of obtaining money damages and attorneys' fees and expenses for any purpose related to this IPA; and (f) exercise any and all other rights and remedies available to it by law or in equity or by any other agreement. Upon request, Debtor shall provide Creditor with a certificate signed by Debtor's officer responsible for information systems attesting to the fact that Debtor has taken all actions required by Creditor following an Event of Default. In addition, Creditor shall have full and unrestricted access to Debtor's records, computer systems, service provider systems (if any) and facilities to verify Debtor's cessation of use, uninstalling and return of the Software following an Event of Default. Creditor shall not be required to re-license, lease, transfer or use the Software in mitigation of any damages hereunder. Creditor may do any of the following in connection with a disposition of the Collateral without adversely affecting the commercial reasonableness thereof: (i) comply with any terms of the license agreement(s) restricting the assignment of the Software; (ii) comply with any applicable state or federal law requirements; and (iii) refrain from giving and disclaim any and all warranties, including without limitation warranties of title, condition, merchantability, and fitness. No remedy permitted hereunder shall be exclusive and all remedies shall be cumulative but only to the extent necessary to recover amounts for which Debtor is liable hereunder.

9. **Assignment.** Debtor shall not sell, assign, transfer (via merger, division, or otherwise), sublet, sublicense, pledge or otherwise encumber or permit a lien arising through Debtor to exist against any interest in this IPA or the Collateral. Creditor may assign or grant a security interest in this IPA and in all or any part of the Collateral without notice to or consent of Debtor, and Debtor agrees not to assert against any assignee any claim or defense Debtor may have against Creditor or any other party. Any assignee of Creditor shall have all the rights, but none of the obligations, of Creditor under this IPA.

10. **NO PREPAYMENT, Non-Cancelable, Unconditional Obligation, Disclaimer. Debtor may not prepay this IPA or any of the Payments due hereunder.** This IPA cannot be canceled or terminated except as expressly provided herein. All representations, warranties and indemnities of Debtor made or agreed to in or in connection with this IPA shall survive expiration or termination of this IPA. DEBTOR AGREES THAT ITS OBLIGATIONS TO PAY AMOUNTS DUE UNDER THIS IPA ARE ABSOLUTE AND UNCONDITIONAL AND SHALL NOT BE SUBJECT TO ANY DEFENSES, SETOFFS, ABATEMENT, REDUCTION OR COUNTERCLAIMS OF ANY KIND regardless of whether or not (a) the Collateral is installed or implemented to the satisfaction of Debtor; (b) Debtor shall maintain the license for the Software, (c) any licensor or distributor breaches any of its obligations, warranties or covenants relating to the Collateral; (d) any installation, implementation, maintenance, support or other services provided in connection with the Collateral has been breached, revoked or otherwise terminated for any reason whatsoever; or (e) Debtor qualifies for or receives any federal or state incentive or reimbursement payments relating to the Collateral or Debtor's use thereof. Without limiting the generality of the foregoing, the bankruptcy of any licensor shall not be a valid cause for Debtor to suspend, modify or terminate its obligations under this IPA and, provided that Creditor has not terminated the Software license following an Event of Default under this IPA, Debtor shall have the right to pursue all rights and remedies of the Software licensee in any bankruptcy proceeding of a licensor. CREDITOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, CONCERNING THE COLLATERAL OR ANY SERVICES RELATED TO THE COLLATERAL INCLUDING, WITHOUT LIMITATION, ANY WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE OR OF MERCHANTABILITY OR AGAINST INFRINGEMENT AND ALSO MAKES NO REPRESENTATION OR WARRANTY THAT DEBTOR'S USE OF THE COLLATERAL WILL SATISFY ANY

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

"MEANINGFUL USE" REQUIREMENTS OR QUALIFY DEBTOR FOR ANY REIMBURSEMENTS OR INCENTIVE PAYMENTS UNDER LAW.

11. <u>GOVERNING LAW; JURY TRIAL WAIVER.</u> THIS IPA, AND ALL MATTERS ARISING FROM THIS IPA INCLUDING ALL INTEREST AND FINANCE CHARGES HEREUNDER, SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH FEDERAL LAW AND, TO THE EXTENT NOT PREEMPTED BY FEDERAL LAW, BY THE LAWS OF THE STATE OF MINNESOTA (EXCLUDING CONFLICTS LAWS). DEBTOR HEREBY CONSENTS TO JURISDICTION AND VENUE OF THE FEDERAL OR STATE COURTS SITTING IN THE STATE OF MINNESOTA FOR RESOLUTION OF ALL DISPUTES OF ANY NATURE WHATSOEVER RELATED TO THIS IPA. DEBTOR AGREES THAT, AT CREDITOR'S SOLE ELECTION AND DETERMINATION, CREDITOR MAY SELECT AN ALTERNATIVE FORUM, INCLUDING ARBITRATION OR MEDIATION, TO ADJUDICATE ANY DISPUTE ARISING OUT OF THIS IPA. THE PARTIES HERETO, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS IPA, INCLUDING ANY ACTION TO ENFORCE THIS IPA OR ANY RELATED AGREEMENTS.

12. <u>Miscellaneous.</u> This IPA constitutes the entire agreement between Debtor and Creditor with respect to the subject matter hereof, and there is no other oral or written agreement or understanding. This IPA may not be amended or modified except by a writing signed by the parties. Debtor consents to the use of electronic signatures and represents and warrants that its electronic signature on this IPA and any related document shall be unconditionally valid and legally enforceable, and agrees not to contest, call into question or otherwise challenge the validity or enforceability of any electronic signature (or the authority of the electronic signer to sign) or raise any of the foregoing as a defense or counterclaim. In Creditor's sole discretion, this IPA and certain documents related to or required in connection with this IPA may be electronically copied and/or delivered by telecopier or other electronic means of transmission ("e-copy") and the e-copy of any such document shall be deemed an original and admissible as such in any court or other proceeding. Without limiting the foregoing, Debtor will send Creditor, on request, any document bearing Debtor's original "wet ink" signature, provided that neither delivery nor failure to deliver the document bearing Debtor's original signature shall limit or modify the agreements set forth above. There shall be only one original of this IPA, and it shall bear the electronic or "wet ink" signature of Creditor and be marked "Original." To the extent this IPA is "chattel paper", a security or ownership interest may only be created herein by transfer of such originally signed counterpart. No delay or omission on the part of Creditor in exercising any right hereunder shall operate as a waiver of such right or of any other right under this IPA or under any other document or instrument executed or delivered in connection with this IPA. Debtor shall pay, on demand, Creditor's costs, fees and expenses incurred in connection with this IPA, any amendment, waiver, release or termination of this IPA or any related document. This IPA is binding on and inures to the benefit of the parties hereto, their permitted successors and assigns. Any written notice hereunder shall be deemed given when delivered personally, deposited with a nationally recognized overnight courier (with all fees pre-paid), delivered via facsimile or e-mail (with confirmation of transmission), or deposited in the United States mails, certified or registered mail, addressed to recipient at its address set forth above or such other address as may be substituted therefor by notice given pursuant to the terms hereof. Debtor hereby agrees that Creditor, including its vendors, service providers, partners, affiliates successors and assigns, may contact Debtor at any telephone number provided to Creditor, by placing voice telephone calls (including use of automatic telephone dialing systems or prerecorded voice messaging) or, in the case of wireless telephones or other wireless devices, by sending e-mail or automated (SMS) text messages. If more than one Debtor is named herein, the obligations of each shall be joint and several. Debtor authorizes, and represents that all Debtor's principals have authorized, Creditor to obtain such credit bureau reports and make such other credit inquiries with respect to Debtor and such principals as Creditor deems appropriate throughout the term of this IPA; on written request, Creditor will identify any reporting agency used for such reports. Under federal law, Creditor must obtain, verify and record identifying information for each person opening an account. Creditor will ask for Debtor's name, address, date of birth and other identifying information. Creditor may also ask for Debtor's driver's license or other identifying documents.

| | | |
|---|---|---|
| Creditor: The Huntington National Bank | By: _DocuSigned by:_ | Title: _____ |
| Debtor:  Green Sheet Marketing, LLC | By: _Marlon Smith_ <br> 1450E5EB20CC4D0... | Marlon Smith, Member |

# EXHIBIT C

███████
███████
███████
███████

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC   1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

2136 37294 - 6/30/2021
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(S.O.S.)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME Green Sheet Marketing, LLC | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 1600 Atkinson Road Northwest | CITY Lawrenceville | STATE GA | POSTAL CODE 30043 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME The Huntington National Bank | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS 11100 Wayzata  Blvd. Ste 801 | CITY Minnetonka | STATE MN | POSTAL CODE 55305 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
HPE DL380 Gen 10 Intel server, storage, software, water & fire protection with any and all accessories and attachments as listed on Bright Vanguard LLC Invoice No. GREEN SHEET dated 28-June-2021 ("Property") together with all accessories, attachments, parts, repairs, upgrades, additions, and replacements attached thereto or incorporated therein; all software embedded in or acquired in an integrated transaction with the Property, and all modifications, additions and replacements thereto and any substitutions therefor; and all proceeds of any of the foregoing, including without limitation all insurance proceeds, rents, cash, accounts, instruments and chattel paper related thereto or arising therefrom. The collateral described in this financing statement is within the scope of Article 9 of the Uniform Commercial Code as adopted in the State where it is filed.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: 001-0844953-500

2136 37294

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

Logout



My Center       Search Center      Filing Center        Document Center      Financial Center      Help Center

Add Note   Existing Searches   Help

### Order Details

| Order Information | | Validator Messages | Welcome David Davis |
|---|---|---|---|

**Order Information**

| | |
|---|---|
| Contract Number | 001-0844953-500 |
| Contract Term | |
| Order Number | 213637294 |
| Order Status | New |
| Order Date | 6/30/2021 1:00 PM |
| Subject | Green Sheet Marketing, LLC |

**Service(s)**
 UCC Filing - Georgia, (S.O.S.)

**Order Notes**
 6/30/2021 - Filing edited by David Davis in Filing Center
 6/30/2021 - Filing approved by David Davis

( Edit Order )  ( Additional Information )

**Actions**

( Duplicate )       ( Hide )

**Forms**

( View All )

( View )   National UCC1
Issues viewing PDF? Click **view**

**Validator Messages**

Filing successfully passed validation.

( Validate Order )

**Welcome David Davis**

6/30/2021 : Account #346710
**TCF National Bank**

Copyright © 2021 Corporation Service Company®. All rights reserved. **Privacy Policy**

The Company | Services & Products | News & Events | Contact Us | Logout

# EXHIBIT D

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

 Now part of
The Huntington National Bank

**Pay Proceeds and Acceptance Confirmation**

| The "IPA": Installment Payment Agreement No. **001-0844953-500 dated June 29, 2021** |
|---|
| "Debtor" |
| **Green Sheet Marketing, LLC, 1600 Atkinson Road Northwest, Suite 200, Lawrenceville, GA 30043** |
| "Creditor" |
| **The Huntington National Bank, 11100 Wayzata Blvd, Suite 801, Minnetonka, MN 55305** |

This Pay Proceeds and Acceptance Confirmation is given in connection with the above-referenced IPA. All capitalized terms used but not defined herein have the meanings assigned in the IPA.

Pursuant to the IPA, Debtor hereby confirms, represents, warrants and agrees to and for the benefit of Creditor that (i) all of the Software and Equipment described in the IPA has been delivered to Debtor at the Location set forth in the IPA and has been accepted by Debtor through a duly authorized representative, (ii) the Description of the Software and Equipment set forth in the IPA is complete and correct, (iii) the Software and Equipment is exactly what Debtor ordered and is satisfactory in all respects and has been accepted by Debtor as of the Date set forth below, and (iv) there has been no adverse change in the business or financial condition of Debtor or any guarantor of the IPA since the day the credit application and, if applicable, most recent financial statements of Debtor and any guarantors were submitted to Creditor.

Debtor agrees to accept the Software and Equipment for all purposes under the IPA even though the implementation of and training on the Software and Equipment may not yet be complete. If such implementation and training is not completed to Debtor's satisfaction or the Software or the Equipment in any way does not satisfy Debtor's expectations, Debtor's sole recourse (if any) shall be against the applicable vendor or licensor of the Software and Equipment and Debtor shall not have any claim or defense to its payment obligations or any other obligations under the IPA.

Debtor hereby irrevocably instructs and authorizes Creditor to pay the following vendor or vendors for the Software and Equipment:

Bright Vanguard LLC (T)                                                                    $388,727.85

Date:      6/29/21
_____

Debtor:    Green Sheet Marketing, LLC          By: *Marlon Smith*                    Marlon Smith, Member
                                                    1450E5EB20CC4D0...

# EXHIBIT E

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

**TCI** The Huntington National Bank

**Continuing Guaranty**

Name of Obligor:  **Green Sheet Marketing, LLC**

Name of Creditor:  **The Huntington National Bank**

The undersigned ("Guarantor") hereby unconditionally and absolutely guarantees the full and prompt payment and performance when due (at maturity, by acceleration, or otherwise) of all payments, rents, debts, liabilities, and other obligations of every type and description of Obligor to Creditor, whether direct, indirect, absolute, contingent, secured, unsecured, primary, secondary, joint, several, joint and several, now existing or hereafter arising, acquired or owed (the "Obligations"). Guarantor agrees to pay Creditor, on demand, in immediately available funds: (a) the amount of each Obligation not paid when due, without any requirement that Creditor first attempt to collect any Obligations from Obligor or any other obligor therefor ("Co-obligor") or resort to any security for the Obligations ("Collateral") or other means of obtaining payment; and (b) all costs and expenses (including court costs and legal fees) incurred by Creditor in connection with the Obligations, this Guaranty and the enforcement of either, together with interest thereon from the time any amount becomes due until paid, at 18% per annum or, if less, the maximum rate permitted by applicable law. Should Guarantor die, sell or transfer all or substantially all Guarantor's non-exempt assets, have or seek to have a receiver appointed for Guarantor's assets, file or have filed against Guarantor a petition under the U. S. Bankruptcy Code, or any similar state or federal insolvency law, all Obligations will be immediately due and payable and Guarantor's obligations hereunder will automatically become immediately due and payable, without demand or notice of any kind. Guarantor's liability hereunder is unlimited and continuing. This Guaranty will remain in full force and effect even if all Obligations are paid in full, until Guarantor revokes this Guaranty prospectively as to future transactions by written notice actually received by Creditor. No revocation shall be effective as to Obligations existing or committed for at the time Creditor receives such notice, or any renewals, extensions or refinancings thereof. This Guaranty shall continue in effect or be reinstated if any amount received by Creditor for application to the Obligations is rescinded, recovered or returned for any reason (including in a bankruptcy proceeding), and the Obligations shall be deemed to have continued as though such amount had not been received. Creditor may require payments by Guarantor hereunder on one or more occasions.

Guarantor agrees that the Obligations will be paid and performed in accordance with their respective terms regardless of any applicable law, regulation or order affecting any of Creditor's rights with respect thereto, and regardless of enforceability of any Obligations against Obligor for any reason, including lack of legal existence, lack of authority, as a result of bankruptcy, insolvency or reorganization, or due to any defenses of Obligor. Guarantor waives presentment, demand, protest, notice of acceptance, notice of the creation or existence of any Obligations and all other notices of any kind, all defenses which may be available by virtue of any valuation, stay, moratorium law or other similar law, any right to require the marshaling of assets, and all defenses available to a surety, guarantor or accommodation co-obligor. Without limiting the foregoing, Guarantor's obligations shall not be released or affected by any act or omission, regardless of whether it may vary Guarantor's risk or otherwise would operate as a release or discharge of Guarantor, all of which may be done without notice to or the consent of Guarantor, including without limitation (i) any waiver, forbearance, or failure to enforce any right or remedy against Obligor, any Co-obligor or any Collateral; (ii) any extensions or renewals of any Obligation; (iii) any rescissions, amendments or modifications of any terms of any Obligations; (iv) the substitution or release of Obligor or any Co-obligor; (v) failure to obtain, perfect or preserve, any rights in or substitution, release, or loss of, any Collateral or other support for any Obligations; or (vi) the application or failure to apply in any particular manner any payments or credits. Guarantor will remain liable for any deficiency following any foreclosure of any Collateral regardless of any discharge given to Obligor. Until all Obligations have been satisfied, Guarantor (a) waives all rights of subrogation, contribution, indemnity and reimbursement against Obligor, any Co-obligor and any Collateral, and (b) will not attempt to collect any indebtedness of Obligor to Guarantor.

Guarantor is giving this Guaranty in good faith for adequate consideration and reasonably equivalent value, and without any intent to hinder, delay or defraud Guarantor's creditors. The execution, delivery and performance of this Guaranty do not and will not violate any provision of any indenture, agreement, instrument, law, rule, regulation or order to or by which Guarantor is a party or bound. Guarantor will provide Creditor on request Guarantor's most recent financial statements and other information, in such form as Creditor reasonably shall require. Guarantor will do all things and execute all documents as required by Creditor to give full effect to this Guaranty and to preserve Creditor's rights hereunder. Guarantor takes full responsibility for keeping informed of Obligor's financial condition and all other circumstances bearing on Guarantor's risk hereunder. Creditor shall have no duty to

advise Guarantor of information known to it regarding Obligor. Guarantor hereby consents to the use of electronic signatures on this Guaranty and any related document, and agrees that Guarantor's electronic signature shall be unconditionally valid and legally enforceable, and that Guarantor shall not contest the validity or enforceability of any electronic signature (or the authority of the signer to sign).

This Guaranty shall be binding on Guarantor, and Guarantor's heirs, representatives, successors and assigns, and shall inure to the benefit of Creditor, its successors and assigns. No assignment or transfer by Guarantor will relieve Guarantor of any liabilities or obligations hereunder. Creditor may, without notice to or consent of Guarantor, assign this Guaranty as it relates to any Obligation to a party who purchases or otherwise acquires all or part of any Obligation (an "Assignee"). Each Assignee shall have the right to enforce this Guaranty against Guarantor solely as it relates to the Obligation it acquired, and such enforcement may be brought separate and apart from actions by Creditor and/or other Assignees.

**THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF MINNESOTA (EXCLUDING CONFLICTS LAWS). GUARANTOR AGREES THAT ANY SUIT TO ENFORCE THIS GUARANTY MAY BE BROUGHT IN FEDERAL OR STATE COURTS IN MINNESOTA, CONSENTS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS AND WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH COURT, AND CONSENTS TO SERVICE OF PROCESS BEING MADE ON GUARANTOR BY MAIL AT THE ADDRESS SPECIFIED HEREIN. GUARANTOR, AFTER CONSULTING (OR HAVING HAD AN OPPORTUNITY TO CONSULT) WITH COUNSEL OF GUARANTOR'S CHOICE, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY.**

This Guaranty constitutes the entire agreement relating to the matters herein. No amendment or waiver of any provision hereof nor consent to any departure therefrom is effective unless in writing, signed by Creditor. No failure or delay by Creditor to exercise any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof. All of Creditor's rights and remedies are cumulative and not exclusive of any other remedies at law or by any other agreement. This Guaranty is in addition to, not in replacement of or substitution for, any other guaranty of the Obligations or any other guaranty of Guarantor held by Creditor. The invalidity or unenforceability of any provisions hereof will not affect the validity or enforceability of any other provisions. If more than one Guarantor has signed this Guaranty, each Guarantor shall be jointly and severally liable hereunder. This Guaranty and other documents may, in Creditor's sole discretion, be delivered by electronic transmission ("e-copy") and the e-copy of such document shall be admissible in any court or other proceeding as an original. Without limiting the foregoing, Guarantor will deliver to Creditor, promptly on request, the originally executed counterpart of this Guaranty; provided that neither delivery nor failure to deliver shall limit or modify the agreements set forth above.

GUARANTOR AGREES THAT CREDITOR MAY, IN ITS SOLE DISCRETION, FROM TIME TO TIME ENTER INTO ONE OR MORE LEASES, INTERIM FUNDINGS, LOANS OR OTHER FINANCIAL ACCOMMODATIONS WITH OR FOR THE BENEFIT OF OBLIGOR, WHETHER OR NOT NOW CONTEMPLATED, AND WHETHER OR NOT SECURED OR OTHERWISE GUARANTEED. THIS GUARANTY WILL COVER EACH AND EVERY PRESENT AND FUTURE OBLIGATION OF OBLIGOR TO CREDITOR, WHETHER OR NOT GUARANTOR RECEIVES NOTICE OF OR CONSENTS TO THE CREATION OR TERMS OF ANY SUCH OBLIGATIONS. ANY NOTICE OF OR REQUEST FOR CONSENT TO AN OBLIGATION ON ANY OCCASION WILL NOT ENTITLE GUARANTOR TO NOTICE OF OR THE RIGHT TO CONSENT TO OTHER OR FUTURE OBLIGATIONS.

Guarantor authorizes and consents to Creditor and its agents obtaining consumer credit reports and other financial and credit information, and making other credit inquiries about Guarantor, both in connection with Obligor's application and from time to time hereafter.

Dated as of June 29, 2021

| Guarantor: Marlon Smith | By: *Marlon Smith* | Marlon Smith , An Individual |
|---|---|---|
| | 1450E5EB20CC4D0... | |

Guarantor's Address:  **108 Windsong Drive, Stockbridge, GA 30281**

Guaranty_Continuing1. ver.10.29.18 451395 S 6/29/2021 6:46 AM

# EXHIBIT F

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8



**Certificate of Incumbency
and Corporate Authority**

To "Creditor": The Huntington National Bank

Name of Corporation: <u>Green Sheet Marketing, LLC</u>  (the "Corporation")
State of Incorporation: <u>Georgia</u>

The undersigned, being the Secretary or an Assistant Secretary of the above-named Corporation, hereby certifies to the above-named Creditor as follows:

1. That he/she is the duly elected, qualified and acting Secretary or Assistant Secretary of the Corporation and is charged with maintaining the records and minutes of the Corporation.

2. That pursuant to the terms of the Corporation's by-laws, as amended, each of the following named persons has been duly designated and appointed to the office(s) indicated opposite such person's name, and each such person continues to hold the indicated office(s) at this time, and the signature set forth below opposite each such person's name is the genuine signature of such person:

| Name | Signature | Title |
|---|---|---|
| Marlon Smith | *Marlon Smith* <br> DocuSigned by: <br> 1450E5EB20CC4D0... | CEO |
|  |  |  |
|  |  |  |

3. That pursuant to the Corporation's by-laws, as amended, each person designated to serve in each of the above-entitled offices was given sufficient and appropriate authority to act on behalf of and to bind the Corporation with respect to lease and secured loan transactions with Creditor, including without limitation the lease or loan that is dated on or about the date hereof and all Schedules and all other documents now or hereafter executed in connection with such lease or loan.

4. That pursuant to the terms of the Corporation's by-laws, as amended, the undersigned has the power and authority to execute this Certificate on behalf of the Corporation.

5. That Creditor may rely on this Certificate and on the authority of each the above-named persons until this Certificate shall have been rescinded by the Corporation in a written notice actually received by Creditor. Any such rescission shall have no effect on the validity of any agreements executed and/or the acts of any officer of the Corporation undertaken prior to Creditor's receipt of such notice. And the Corporation has ratified and/or confirmed (as the case may be) all prior actions of each of the above-named persons while holding the indicated office.

IN WITNESS WHEREOF, the undersigned has caused this Certificate of Incumbency and Corporate Authority to be executed as of the date set forth below.

Signature: *Marlon Smith*
DocuSigned by:
1450E5EB20CC4D0... [Assistant] Secretary of the Corporation

Print Name: Marlon Smith

Date: June 29, 2021

Auth_Corp_350to1M ver. 07.08.16 451395 S 6/29/2021 6:46 AM

# EXHIBIT G

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8

 Now part of
The Huntington National Bank

**Insurance Addendum**

| The "IPA": Installment Payment Agreement No. 001-0844953-500 dated June 29, 2021 |
|---|
| "Debtor" |
| Green Sheet Marketing, LLC, 1600 Atkinson Road Northwest, Suite 200, Lawrenceville, GA 30043 |
| "Creditor" |
| The Huntington National Bank, 11100 Wayzata Blvd, Suite 801, Minnetonka, MN 55305 |

This Insurance Addendum (this "Addendum") dated as of June 29, 2021 is by and between the above-named Creditor and the above-named Debtor, and is attached to and made a part of the above-referenced IPA between Creditor and Debtor. This Addendum sets forth Debtor's obligations with respect to insurance. Debtor shall pay for and maintain, and furnish Creditor a certificate evidencing, insurance with respect to the Equipment (as defined in the IPA), covering loss or damage to the Equipment in an amount no less than the Equipment's full replacement value, with Creditor as loss payee. Each insurance policy shall be in such form, including a maximum deductible as provided below, and with such insurers as Creditor may accept, shall require the insurer to give Creditor at least 30 days' prior written notice of any cancellation or change in terms, and shall specify that no action or misrepresentation by Debtor will affect Creditor's coverage. Creditor has no duty to verify or notify Debtor that any such policy exists or is free of defects. Debtor hereby appoints Creditor as Debtor's attorney-in-fact to make claims, receive payments and execute and endorse all documents, checks or drafts under any such policy. If Debtor fails to maintain, pay for or provide Creditor with evidence of the required insurance, Creditor may, but is not obligated to, obtain insurance covering Creditor's interest in the Equipment from an insurer of Creditor's choice. Creditor may charge Debtor the costs of acquiring and maintaining such insurance, and a fee for Creditor's services (collectively, "Insurance Charge"). Nothing in this IPA will create an insurance relationship of any type between Creditor and any other person.

**Insurance Requirements:**
**Equipment:** The insurance certificates should include the contract number 001-0844953-500.

**Required Insurance Limits and Maximum Deductible:**
- Minimum property damage coverage of __$388,727.85__ .
- Deductible must be stated on the certificate and shall not exceed $10,000 or 10% of the total cost of the Equipment.

**Loss Payee Information:**
The Huntington National Bank, its successors and assigns must be named as Loss Payee.

**Debtor shall instruct the insurance company to issue endorsements adding The Huntington National Bank, its successors and assigns, as lender's loss payee on all such insurance policies.**

**EVERY TERM IS AGREED TO AND ACCEPTED BY**

Creditor: The Huntington National Bank    By: _____    Title: _____

Debtor: Green Sheet Marketing, LLC    By: *Marlon Smith*    Marlon Smith, Member
1450E5EB20CC4D0...

(NOTE: Signature must be the same as on the IPA)
*************************************************************************************************

**_PLEASE COMPLETE THE FOLLOWING IF UNABLE TO PROVIDE COMPLETED CERTIFICATE_**

| Insurance Company Property: | Agent Name, Address, Email Address: | Agent Phone and Fax Numbers: |
|---|---|---|
| | | |

IPA_InsuranceAddendum.doc ver.03.26.2011 451395 S 6/29/2021 6:59 AM

# EXHIBIT H

DocuSign Envelope ID: 4D405E79-801D-405B-8C70-0D370211F5A8



**AUTHORIZATION FOR
AUTOMATIC ELECTRONIC PAYMENT**

By signing and completing this Authorization and returning it to The Huntington National Bank (together with its successors and assigns, "Creditor"), you authorize all payments due to Creditor under all existing and future agreements with Creditor (as amended or otherwise modified from time to time, the "Contracts") to be made from the designated account on the terms and conditions set forth herein.

**Please make your regular payment until your invoice indicates that automatic electronic payment will be made.**

Please complete the following (if any account information is not completed, you authorize Creditor to rely on the attached check or deposit slip to obtain the relevant information).

Name of Account Holder: _Green sheet Marketing LLC_

Authorized Signature: _Marlon Smith_          Date: _6/29/21_
1450E5EB20CC4D0...

Title of Signor (if Account Holder is NOT an individual): _____ CEO

Name of Financial Institution: _Regions Bank_

Account Number: _____████████_____ (Account is a   Checking Account  or   Savings Account)

Bank Routing Number: _____████████_____ (usually found next to account number)

### PLEASE ATTACH A VOIDED CHECK
(a deposit slip may be attached if account does not have checks)

**Terms and Conditions**:   You authorize Creditor to initiate debit entries to your designated account for making your payments to Creditor, including your regularly scheduled payment amount plus any past due amounts and any other outstanding fees and charges due and owing under your Contracts. Creditor typically will initiate such debit entries on your regularly scheduled due dates.  If a due date falls on a weekend or holiday, Creditor may initiate the debit entries on either (i) the last business day prior to the due date or (ii) the first business day after the due date.  If an attempted debit entry is returned for any reason, including insufficient funds, Creditor may assess a fee for each failed debit entry and may, but is not required to, attempt the debit entry up to two (2) more times.  Creditor also may make credit entries to your designated account for purposes of adjusting debit entries made in error.

This authorization will remain in full force and effect until Creditor has received written notice of your intent to cancel this authorization in such time and in such manner as to afford Creditor a reasonable opportunity to act on such notice.  Creditor may cancel or suspend your automatic payment at any time and require non-automatic payments.  If Creditor suspends automatic payment at its discretion, it may subsequently resume automatic payment.

Automatic electronic payments are ☑ **REQUIRED (if this box is NOT checked, automatic electronic payments are optional)**.  If the "Required" box is checked, you will be in default under your Contracts if you cancel automatic payment.  This additional default provision is hereby added to your Contracts as if stated therein.  If the "REQUIRED" box is checked, please initial:

Initial: _MS_

You represent that the designated account is used primarily for business and commercial purposes.  You should immediately notify Creditor of any automatic payment error.   If you desire to change the account from which automatic payments are made, you must timely notify Creditor and execute a new Authorization for Automatic Electronic Payment.

Payments under this Authorization will be made using the automated clearing house ("ACH") funds transfer system and will be made in accordance with this authorization, the ACH Rules and other applicable law in effect from time to time.  This authorization does not alter or lessen your obligations under your Contracts with Creditor including but not limited to those provisions regarding the amount of the monthly payments, when payments are due, the application of payments, the assessment of late charges or the determination of delinquencies.

### For Office Use Only  (do not complete)

Contract No. _____          First ACH Date: _____

ACHRequired ver. 04.01.2005 451395 S 6/29/2021 6:57 AM

# EXHIBIT I



August 11, 2021

**VIA FEDERAL EXPRESS**

Green Sheet Marketing, LLC
Attn: Marlon L. Smith, Member
1600 Atkinson Road Northwest
Suite 200
Lawrenceville, Georgia 30043
marlons@gottadreamgreen.com

Marlon L. Smith
108 Windsong Drive
Stockbridge, Georgia 30281
marlons@gottadreamgreen.com

Re:    **Notice of Default under Equipment Finance Transaction Number 001-0844953-400 (the "Finance Transaction") from The Huntington National Bank ("Creditor") to Green Sheet Marketing, LLC ("Debtor")**

Dear Mr. Smith,

Reference is made to that certain Installment Payment Agreement, dated as of June 29, 2021, between Debtor and Creditor (the "IPA"), that certain Pay Proceeds and Acceptance Confirmation, dated as of June 29, 2021, from Debtor in favor of Creditor (the "Confirmation"), that certain Continuing Guaranty, dated as of June 29, 2021, from Marlon L. Smith ("Guarantor") in favor of Creditor (the "Guaranty"), that certain Certificate of Incumbency and Corporate Authority, dated as of June 29, 2021, from Debtor in favor of Creditor (the "Certificate"), that certain Insurance Addendum, dated as of June 29, 2021, from Debtor in favor of Creditor (the "Addendum"), and that certain Authorization for Automatic Electronic Payment, dated as of June 29, 2021, from Debtor in favor of Creditor (the "Authorization," and sometimes collectively with the IPA, the Confirmation, the Guaranty, the Certificate and the Addendum, as well as any other documents and/or instruments relating to, evidencing, securing and/or guarantying the Finance Transaction, the "Credit Agreements"). All capitalized terms that not otherwise defined in this Notice shall have the same meanings that are ascribed to them in the IPA.

This letter shall constitute formal notice from Creditor to Debtor and Guarantor (sometimes collectively referred to as "Obligors") that Events of Default have occurred under the Credit Agreements based on the following: (i) Debtor's failure to make the required monthly Payment in the amount of $7,633.13, that was due on July 30, 2021, in violation of, *inter alia*, Section 1 of the IPA; and (ii) Debtor's breach of the representation and warranty that the Collateral shall at all times be located at the Location that is owned or leased by Debtor, in violation of Section 5(h) of the IPA (collectively, the Events of Default").

Green Sheet Marketing, LLC
August 10, 2021
Page 2

Creditor hereby provides notice to Obligors that, as a result of the Events of Default, Creditor is hereby exercising its rights and remedies under Credit Agreements, including, but not limited to, the right, pursuant to Section 8 of the IPA, to declare immediately due and payable the sum of all amounts currently due under the IPA, plus all unpaid Payments for the remaining term of the IPA, discounted from their respective due dates at the implicit rate of interest under the IPA, plus a fee of 5% of the foregoing amount, and all attorney's fees and costs incurred by Creditor in connection with the enforcement of its rights and remedies under the Credit Agreements, which sum totals $414,763.43 (the "Total Amount Due").

Based on the foregoing, Creditor hereby demands that Debtor immediately pay the Total Amount Due to Creditor.  Creditor also demands that, pursuant to the Guaranty, Guarantor immediately pay the Total Amount Due to Creditor.  In the event that the Total Amount Due is not paid to Creditor immediately, Creditor expressly reserves the right to initiate a lawsuit against Obligors to recover the Total Amount Due, plus all of the attorney's fees and costs incurred by Creditor in that lawsuit, and any and all other amounts lawfully due Creditor under the Credit Agreements and applicable law.

Creditor expressly reserves, and does not waive, all of its rights and remedies under the Credit Agreements and applicable law, regardless of whether any of those rights or remedies are set forth in this Notice.  In addition, any acceptance by Creditor of a partial payment made by either of the Obligors (including, without limitation, any regularly-scheduled monthly Payments under the IPA) shall not constitute a cure of any Events of Default under the Credit Agreements, or a waiver or modification of any rights or remedies available to the Lender under the Credit Agreements or applicable law, including, without limitation, Creditor's right to declare the Total Balance Due under the IPA to be immediately due and owing. No oral or written communications with Creditor that either of Obligors may have had, or that either of them may have after the date of this Notice, shall constitute an agreement by Creditor to amend any terms of the Credit Agreements, or to forbear, in any manner or for any period of time, from the enforcement of Creditor's rights and remedies under the Credit Agreements or under applicable law, unless such communications are reflected in an agreement signed by Debtor and Creditor.

Sincerely

Gregory A Payer
Assistant Vice President

8/11/2021

FedEx Ship Manager - Print Your Label(s)



TRK# 0201   7745 0708 3885

XH MGEA

30043
GA-US   ATL

THU - 12 AUG 10:30A
PRIORITY OVERNIGHT

TO  MARLON L SMITH
GREEN SHEET MARKETING, LLC
1600 ATKINSON ROAD NORTHWEST
SUITE 200
LAWRENCEVILLE GA 30043
(678) 404-8743
REF:
INV:
PO:
DEPT:

ORIGIN ID: GPZA    (952) 655-7636
GREGORY A RAVER
THE HUNTINGTON NATIONAL BANK
FEDEX - DO NOT RETURN
11100 WAYZATA BOULEVARD, SUITE 801
MINNETONKA, MN 55305
UNITED STATES US

SHIP DATE: 11AUG21
ACTWGT: 0.50 LB
CAD: 105448640/INET4400

BILL SENDER

56DJ1/BAF3/FE4A

FedEx Express

J21202107090100

**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

8/11/2021

FedEx Ship Manager - Print Your Label(s)



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.