UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Huntington National Bank, | Case No. 21-cv-2000 (WMW/DTS) |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND MOTION TO DISMISS |
| Green Sheet Marketing, LLC, and Marlon Smith, | |
| Defendants. | |

---

Before the Court is Plaintiff Huntington National Bank's (Huntington) motion for default judgment against Defendants Green Sheet Marketing, LLC (GSM), and Marlon Smith, (Dkt. 18), and Huntington's motion to dismiss counts III–VI of the complaint, (Dkt. 28). For the reasons addressed below, the Court grants in part and denies in part Huntington's motion for default judgment and grants Huntington's motion to dismiss counts III–IV of the complaint.

### BACKGROUND

Huntington is a national bank headquartered in Ohio. GSM is a marketing company headquartered in Georgia. Smith, a Georgia resident, is GSM's sole member and secretary.

Huntington alleges that it entered into an Installment Payment Agreement (Agreement) with GSM for a financed amount of $388,727.85. On June 29, 2021, Huntington and GSM entered into the Agreement to facilitate GSM's purchases of certain software and equipment from a broker. The Agreement authorizes Huntington to pay the broker the financed amount, at which time the broker will deliver the purchased software

and equipment to GSM and GSM will irrevocably accept the collateral for the purposes of the Agreement.  The Agreement requires GSM to make 60 monthly payments of $7,633.13 to Huntington beginning on July 30, 2021.  A continuing guaranty (Guaranty) from Smith in favor of Huntington secures the Agreement and provides an absolute guarantee of full and prompt payment of GSM's obligations under the Agreement and obligates Smith to pay all costs, fees and expenses Huntington incurs to enforce the Guaranty and GSM's other obligations.

The Agreement provides that any of the following circumstances constitute default: GSM fails to make a payment when due, GSM fails to comply with the Agreement and that failure continues for 10 days after notice from Huntington, GSM's representations and warranties set forth in or made in connection with the Agreement prove to be materially false or misleading, GSM defaults on any other obligation to Huntington, or any material indebtedness of GSM or Smith is accelerated or payment in full thereof is demanded.  Under the Agreement, default entitles Huntington to declare immediately due and payable, and to recover from GSM, the sum of all amounts then due and remaining for the term of the Agreement.  If GSM does not make a monthly payment within 10 days of that payment's due date, the Agreement permits Huntington to impose a late fee of 10 percent of the past-due amount and charge additional interest of 18 percent per annum on the unpaid amount.  The Agreement also provides that Huntington may exercise its rights and remedies available under the Uniform Commercial Code, law, equity or any other agreement.

On July 30, 2021, GSM defaulted on the Agreement when GSM failed to remit its first monthly payment to Huntington. On July 31, 2021, GSM made a payment for $7,783.13 to Huntington, which was returned on the basis of insufficient funds. On August 11, 2021, Huntington notified GSM and Smith of the default.

Huntington filed this action on September 9, 2021, and served Smith on September 16, 2021, and GSM on January 10, 2022. On Huntington's application, the Clerk of Court entered default as to Smith on December 2, 2021, and GSM on June 3, 2022. Neither GSM nor Smith has appeared in this action. Huntington now moves for default judgment as to counts I and II of its complaint and to voluntarily dismiss counts III and IV of its complaint.

## ANALYSIS

To obtain a default judgment, a party must follow a two-step process. The party seeking a default judgment first must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, unless a party seeks a sum certain, or a sum that can be made certain, "the party must apply to the court for a default judgment" following entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b)(1)–(2).

The record supports the Clerk's entries of default because the record reflects that Huntington properly served GSM and Smith with the complaint and summons and that GSM and Smith failed to answer or otherwise respond. Because Huntington satisfied the first step of the two-step process for obtaining a default judgment, *see* Fed. R. Civ. P. 55(a), the Court next addresses whether Huntington has satisfied the second step of this process.

3

I.  Liability

After the Clerk of Court enters default, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). When the Clerk of Court enters default, the factual allegations in the complaint are taken as true and deemed admitted, except for allegations relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6); *accord Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010). "[I]t remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray*, 595 F.3d at 871 (internal quotation marks omitted). The Court, therefore, must evaluate the factual basis of each count Huntington advances in the complaint. *See id.* (discussing the district court's evaluation of whether the plaintiff's factual allegations, if taken as true, would support plaintiff's claim). The Court addresses each count of Huntington's complaint in turn.

A.  Count I: Breach of Contract by GSM

Huntington alleges a breach-of-contract claim against GSM. Minnesota law governs any dispute arising out of the Agreement.[1] Under Minnesota law, three elements comprise a breach-of-contract: formation of a contract, the plaintiff's performance of any

---

[1] The Agreement contains a Minnesota choice-of-law provision. "A federal court sitting in diversity employs the choice of law principles of the forum state when deciding whether a contractual choice of law provision applies." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 865 (D. Minn. 2015). Minnesota generally enforces choice-of-law provisions, applying the substantive law that parties agree to when contracting. *See id.* at 866 (citing *Schwan's Sales Enters., Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 596 (8th Cir. 2007)). Accordingly, the Court applies Minnesota state law to the claims in this action.

condition precedent to the defendant's performance and a breach by the defendant. *See Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

Huntington alleges that formation occurred when Huntington and GSM entered into the Agreement on June 29, 2021. Huntington further alleges that it satisfied its obligations under the Agreement by lending GSM $388,727.85.

According to Huntington, GSM breached its obligations by failing to remit the first monthly payment of $7,633.13 by the due date of July 30, 2021, and by providing an insufficient make-up payment on July 31, 2021. Huntington argues that GSM's failure to make a required monthly payment constitutes breach and entitles Huntington to exercise all of its remedies under the Agreement, including accelerating payment of GSM's full indebtedness. Huntington alleges that it provided Defendants notice of the default on August 11, 2021. In Huntington's August 2021 notice, Huntington notified Defendants that it planned to exercise its right to accelerate the payments—that is, "to declare immediately due and payable the sum of all amounts currently due under the [Agreement], plus all unpaid Payments for the remaining term of the [Agreement]." Huntington alleges that, as of August 10, 2021, GSM owed Huntington $414,763.43.

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against GSM. For this reason, the Court concludes that Huntington's unchallenged allegations, accepted as true in light of GSM's default, constitute a legitimate claim for breach of contract as to GSM.

### B. Count II: Breach of Contract by Smith

Huntington also alleges breach of contract by Smith. The Guaranty specifies that any dispute arising out of the contract is governed by Minnesota law. The same elements for breach of contract under Minnesota law that govern the Agreement between Huntington and GSM also govern the Guaranty between Huntington and Smith. *See Lyon Fin. Servs.*, 848 N.W.2d at 543.

Huntington alleges that Smith secured the Agreement between Huntington and GSM in part by a Guaranty in favor of Huntington. Under the Guaranty, Huntington alleges, Smith "unconditionally and absolutely guaranteed the full and prompt payment of all obligations of [GSM] including, without limitation, amounts due under the [Agreement]." The Guaranty also provides that Smith is liable for all costs and expenses incurred by Huntington in connection with enforcing the Guaranty and GSM's obligations. As addressed above, GSM breached the Agreement by ceasing to make its monthly payment of $7,633.13 due on July 30, 2021. Following GSM's nonpayment, Huntington alleges, Smith has failed and refused to pay the amounts owed under the Agreement, thereby breaching the Guaranty.

Accepting these facts as true, Huntington has alleged sufficient facts to support a breach-of-contract claim against Smith. For this reason, the Court concludes that Huntington's unchallenged allegations, accepted as true in light of Smith's default, constitute a legitimate claim for breach of contract as to Smith.

### C.     Remaining Claims (Counts III, IV, V and VI)

Huntington's complaint alleges four additional counts against Defendants. At oral argument on Huntington's motion for default judgment, Huntington represented its intent to seek dismissal of these four counts rather than default. After the hearing, Huntington moved to voluntarily dismiss counts III, IV, V and VI of the complaint without prejudice.

The Court grants Huntington's motion to voluntarily dismiss counts III, IV, V and VI of the complaint without prejudice. *See* Fed. R. Civ. P. 41(a)(2). Huntington's motion for entry of default judgment as to the remaining counts, therefore, is denied as moot.

## II.    Damages

A district court must ascertain the sum of damages at stake before entering a default judgment. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000). A party seeking a default judgment must prove its damages to a reasonable degree of certainty. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001). A district court may determine damages by computing from facts in the record the amount that a plaintiff is lawfully entitled to recover and enter judgment accordingly. *See Pope v. United States*, 323 U.S. 1, 12 (1944).

Huntington seeks actual damages in the amount of $434,537.20. In addition, Huntington seeks attorneys' fees, costs and post-judgment interest.

### A.     Actual Damages

#### 1.     Past-Due Monthly Payments

As of the date of Huntington's motion, GSM owed Huntington 10 past-due monthly payments, which Huntington contends amount to $76,331.30. The Agreement obligates

7

GSM to pay Huntington $7,633.13 per month. This amount multiplied by 10 months amount is $76,331.30, the same amount that Huntington seeks from GSM. Based on the text of the Agreement, the Court concludes that facts in the record demonstrate to a reasonable degree of certainty that Huntington suffered actual damages in the amount of $76,331.30 for the monthly payments that GSM owed but failed to remit.

Huntington, therefore, may recover $76,331.30 as damages for GSM's past-due monthly payments as of the date of Huntington's motion.

### 2.  Present Value of Remaining Installments

Huntington contends that, as of the date of Huntington's motion, the present value of the remaining 50 installments that GSM owes is $333,658.85, including implicit interest. The Agreement provides that, in the event of a breach, Huntington may recover "all unpaid [p]ayments for the remaining term of [the Agreement], discounted from their respective due dates at the implicit interest rate [of the Agreement]." Huntington relies on an amortization chart that calculates the present value of GSM's future payments, with interest. The amortization chart confirms that the present value of these installments at the time of Huntington's motion for default judgment was $333,658.85, taking into account a 6.65 percent interest rate.

Huntington, therefore, may recover $333,658.85 for the value of GSM's remaining installments.

### 3.  Penalty Fee on Amounts Due and Owed

The Agreement provides for a 5 percent penalty on all monthly payments if default occurs in the first year of the payment schedule. The total amount of monthly payments

8

that the Agreement obligates GSM to make is $457,987.80. Huntington contends that the 5 percent penalty on the value of all monthly installment payments totals $16,682.95. Five percent of $457,987.80 is $22,899.39. Accordingly, facts in the record demonstrate to a reasonable degree of certainty that the Agreement entitles Huntington to a penalty fee of at least $16,682.95 because that GSM defaulted on its obligations under the Agreement within one year.

Huntington, therefore, may recover $16,682.95 as a penalty fee.

### 4. Fees Incurred

The Agreement provides that GSM must pay any fees and expenses Huntington incurred "in the exercise of any right or remedy available to it under [the Agreement]," including expenses related to managing and disposing of the collateral and the "costs of obtaining money damages and attorneys' fees and expenses for any purpose related to [the Agreement]." Huntington contends that it incurred $60 in fees related to two returned monthly payments and $150 for a documentation fee, as explained in the declaration of Jordan Shamblott, a Huntington officer and financial recovery representative. Huntington does not provide any documentation of these fees. For this reason, the Court rejects Huntington's request for fees of $210.

### 5. Late Fee on Past-Due Payments

Under the Agreement, if an amount payable under the Agreement is not paid within 10 days of its due date, Huntington "may impose a late fee of up to 10% of the amount of the past due payment." Huntington seeks an award of $7,654.10 in late fees. The total amount of late fees Huntington seeks is calculated as 10 percent of a regular monthly

9

payment of $7,633.13 multiplied by 10 late payments. Ten percent of a regular monthly payment equals $763.31, which, multiplied by 10 late payments, equals $7,633.13. Huntington, however, requests $7,654.10 in "late fees" to account for 10 percent of the documentation fee and 10 percent of the returned monthly payment fees addressed in the prior section. Huntington offers no explanation for why the Court should award late fees for the documentation and returned-payment fees in addition to late fees for GSM's regular monthly payments. Moreover, the Court has denied Huntington's request for damages based on the documentation and returned-monthly-payment fees. For these reasons, the Court denies Huntington's request for late-fees associated with the $210 of miscellaneous fees Huntington alleges it incurred.

The Court, therefore, awards $7,633.13 in late fees, but declines to award any additional late fees for the miscellaneous fees already denied.

In summary, for the reasons addressed above, the Court awards $434,306.23 in actual damages.

### B. Attorneys' Fees and Costs

Huntington seeks attorneys' fees in the amount of $24,478.25 and costs in the amount of $1,477.00. Minnesota law recognizes the freedom of contracting parties to bargain for the remedy of attorneys' fees. *See State Bank of Cokato v. Ziehwein*, 510 N.W.2d 268, 270 (Minn. Ct. App. 1994). Minnesota courts enforce contractual obligations to pay attorneys' fees if the amount of fees allowed by the contract is reasonable. *See id.*

A district court has substantial discretion when determining the reasonableness of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Jarrett v. ERC Props.,*

*Inc.*, 211 F.3d 1078, 1084–85 (8th Cir. 2000). The burden of establishing that the fees sought are reasonable rests with the party seeking attorneys' fees. *Hensley*, 461 U.S. at 437. Courts employ the lodestar method when determining the amount of reasonable attorneys' fees. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563–64 (1986). Under this method, the lodestar amount is presumed to be the reasonable fee to which counsel is entitled. *Id.* at 564; *McDonald v. Armontrout*, 860 F.2d 1456, 1458 (8th Cir. 1988). To calculate the lodestar amount, a district court multiplies the number of hours reasonably expended by a reasonable hourly rate, *Hensley*, 461 U.S. at 433, which must be "in line with [the] prevailing [rate] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The party seeking an attorneys' fees award has the burden to establish entitlement to an award with documentation that addresses the nature of the work and the appropriateness of the hourly rates and hours expended. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley*, 461 U.S. at 437).

Here, Huntington seeks $24,478.25 in attorneys' fees and $1,477 in costs. As reflected in Huntington's counsel's billing records, this amount is based on 85.7 hours of work performed by three partners and one associate at hourly rates between $335 and $355 and two paralegals at hourly rates of $150.

As neither GSM nor Smith has appeared in this matter, they do not challenge the reasonableness of the hourly rates charged by Huntington's counsel. The Court, nonetheless, must confirm that the claimed hourly rates are reasonable. A district court may rely on its experience and knowledge of prevailing market rates to determine whether

the claimed hourly rate is reasonable. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005). A reasonable fee is one that is "adequate to attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *McDonald*, 860 F.2d at 1458 (quoting *Blum*, 465 U.S. at 897). The "skill, experience, and reputation of counsel are key factors bearing on a rate's reasonableness." *Id.* at 1459. Here, Huntington claims hours billed by attorneys William J. Serritella, Jr.; Daniel N. Moak; Mark G. Schroeder and Abby N. Sunberg of the law firm Taft Stettinius & Hollister LLP in Chicago, Illinois. The record does not provide any facts addressing the experience of Huntington's counsel other than their titles and a statement in a declaration by one of Huntington's attorneys, Moak, asserting that "Taft's attorneys' fees . . . incurred in this matter are reasonable and appropriate for the work performed on behalf of Huntington, considering the experience of the timekeepers involved, the difficulty and complexity of the issues presented, and the amount of time spent on the matter." Based on the Court's experience and knowledge of prevailing market rates, however, the Court concludes that the hourly rates claimed by Huntington are reasonable and consistent with the rates in this community for similar services by associate- and partner-level attorneys. *See Blum*, 465 U.S. at 895 n.11.

Although Defendants also do not challenge the reasonableness of the number of hours Huntington's attorneys expended, the Court must independently evaluate the reasonableness of the number of hours expended. When conducting a lodestar analysis, a district court should exclude "hours that were not reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). As such, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive,

12

redundant, or otherwise unnecessary." *Id.* Here, the record reflects that Huntington's attorneys and paralegals, from the inception of this case, spent approximately 53.5 hours on analysis/strategy, 3.9 hours on document management, 0.3 hours on fact investigation, 21.1 hours on pleadings, 1.2 hours on discovery, and 5.7 hours on other case-assessment and written-submission tasks. This work included reviewing loan documents, conferring and corresponding with Huntington, investigating Huntington's claims, drafting the complaint, drafting the application for entry of default by the Clerk of Court and drafting the motion for default judgment and supporting filings. The record also reflects that Huntington applied a 10 percent "courtesy discount" to all attorney and paralegal fees. Based on this record, the Court concludes that the number of hours expended by Huntington's attorneys in this matter was reasonable. *See McDonald*, 860 F.2d at 1458.

Finally, Huntington seeks $1,477 in costs, which are documented with invoices and include court and process-server fees. Again, neither GSM nor Smith challenges the reasonableness of these costs. The Court finds that these costs reasonably relate to Huntington's pursuit of this matter against GSM and Smith and are reasonable in amount.

For these reasons, the Court awards Huntington $24,478.25 in attorneys' fees and $1,477 in costs.

    **C.**    **Post-Judgment Interest**

Huntington requests an award of post-judgment interest. A prevailing party has a right to post-judgment interest under 28 U.S.C. § 1961. Post-judgment interest begins to accrue on the day judgment is entered and accrues on a plaintiff's total award, including costs and attorneys' fees, until the judgment is satisfied. *See Jenkins by Agyei v. Missouri*,

931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-0358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Under Section 1961(a), post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a). The Court, therefore, awards post-judgment interest at the rate set pursuant to section 1961(a).

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Plaintiff Huntington National Bank's (Huntington) motion to dismiss Counts III, IV, V and VI of the complaint without prejudice, (Dkt. 28), is **GRANTED**.

2. Huntington's motion for default judgment as to Counts I and II, (Dkt. 18), against Defendants Green Sheet Marketing, LLC (GSM), and Marlon Smith is **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Huntington's motion is **GRANTED** as to Counts I and II, with damages awarded as follows:

        i. Judgment shall be joint and several against GSM and Smith;

        ii. Huntington is awarded $434,306.23 in monetary damages, exclusive of its reasonable attorneys' fees and costs; and

      iii. Huntington is awarded reasonable attorneys' fees and costs of $24,478.25 and $1,477, respectively.

b. Huntington is awarded post-judgment interest on the total money judgment of $461,738.48 at the rate set pursuant to 28 U.S.C. § 1961(a).

c. Huntington's motion for default judgment is **DENIED AS MOOT** as to Counts III–VI.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 22, 2022
                s/Wilhelmina M. Wright
                Wilhelmina M. Wright
                United States District Judge